# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIO DELUCA, | Civil Action No. 11-4129 |
| **Plaintiff,** | **OPINION** |
| v. | **HON. WILLIAM J. MARTINI** |
| **ALLSTATE NEW JERSEY INSURANCE COMPANY,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on the application for an Order to Show Cause filed by Plaintiff Mario DeLuca, which seeks remand of this case pursuant to 28 U.S.C. § 1447(c). The Court issued the Order to Show Cause on July 27, 2011, and a show cause hearing was held on August 16, 2011. For the reasons stated below, Plaintiff's request for remand is GRANTED and this case is REMANDED to the Superior Court of New Jersey.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Mario DeLuca commenced this action against Defendant Allstate New Jersey Insurance Company ("Allstate NJ") in the Superior Court of New Jersey on July 5, 2011. Plaintiff alleges that Allstate NJ has violated the New Jersey Franchise Practices Act ("NJFPA") and the implied covenant of good faith and fair dealing by attempting to terminate Plaintiff's Exclusive Agency Agreement without good cause. (Compl. ¶ 1.) Plaintiff has been an agent for Allstate NJ for 42 years, and has been acting as an

independent contractor pursuant to the Exclusive Agency Agreement since 1999.  (Compl.

¶ 5.)  On June 29, 2011, Allstate NJ sent Plaintiff a letter, notifying him that his Exclusive

Agent Agreement was being terminated as of September 30, 2011.  (Compl. ¶ 20.)  In

response, Plaintiff filed the instant Complaint in state court, and further moved for a

preliminary injunction preventing Defendant from terminating Plaintiff while the case is

pending.  (Compl. ¶ 1.)

On July 19, 2011, Defendant removed the case to this court based on diversity

jurisdiction, stating that Plaintiff is a citizen of New Jersey while Allstate NJ is an Illinois

corporation with its principal place of business in Illinois.  (Docket Entry No. 1.)  In

response, Plaintiff asserted, via his application for an Order to Show Cause, that there is no

diversity of citizenship here as Allstate NJ has its principal place of business in New

Jersey, not Illinois.  (Docket Entry Nos. 9-11.)  This Court then ordered Defendant to show

cause why this case should not be remanded to the Superior Court of New Jersey.  (Docket

Entry No. 16.)

It is undisputed that Allstate NJ has an office in Bridgewater, New Jersey, that

Allstate NJ is a wholly-owned subsidiary of Allstate Insurance Company, Inc. ("AIC"), and

that AIC has its headquarters in Northbrook, Illinois.  Allstate's website lists the "home

office" of Allstate NJ as Bridgewater, New Jersey.  (Garner Decl., Docket Entry No. 11,

Ex. 1.)  Allstate NJ's President and Chief Executive Officer, William Ballinger

("Ballinger"), who also serves as a member of the Board of Directors and of the Executive

Committee, works out of the Bridgewater, New Jersey office.  (Ballinger Decl. ¶¶ 1, 7.)

2

Ballinger's declaration states that other than himself, the other current members of the Board of Directors (the "Board") and the other current Officers of Allstate NJ "regularly report to work" at Allstate NJ's "executive headquarters" in Northbrook, Illinois. (Ballinger Decl. ¶¶ 4-5.)  Furthermore, Ballinger states that all Board and Board committee meetings take place at the Northbrook, Illinois headquarters, and that "[a]ll executive and corporate strategy decisions" as well as "formal control over and approval of all significant decisions regarding ANJ's business activities" are made at the Northbrook, Illinois headquarters.  (Ballinger Decl. ¶¶ 8-10.)  However, Plaintiff DeLuca states that all of his dealings as an Allstate NJ agent have been with or through the Bridgewater, New Jersey office, and that he has never "had any meaningful contact" with the directors and officers listed in Ballinger's Declaration.  (DeLuca Decl. ¶¶ 5-6.)

## II.   LEGAL STANDARDS

### A.   Standard for Remand

A state court action may be removed to federal district court only if the action could otherwise have been commenced in federal court.  28 U.S.C. § 1441(a).  Where the case could not have been commenced in federal court because subject matter jurisdiction is lacking, a party may seek to remand a civil action back to state court.  28 U.S.C. § 1447(c).  The burden is on the party opposing remand to show that removal was proper.  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert denied*, 498 U.S. 1085, 111 S. Ct. 959, 112 L. Ed. 2d 1046 (1991).  The Third Circuit has held that "the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the

litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). Moreover, removal statutes are to be strictly construed, and all doubts must be resolved in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 S. Ct. 868, 85 L. Ed. 1214 (1941).

### B.    Determining Corporate Citizenship

Pursuant to 28 U.S.C. §1332, federal courts have jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000.  In determining the citizenship of a corporation for diversity jurisdiction purposes, "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  Up until recently, the Third Circuit applied a "center of corporate activities" test to determine a corporations "principal place of business," which looked to the corporation's day-to-day activities.  *Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960). However, the Supreme Court recently resolved the conflicting interpretations of "principal place of business" among the Circuits by holding that the "nerve center" test governs. *Hertz Corp. v. Friend*, 559 U.S. ___, 130 S.Ct. 1181, 175 L. Ed. 2d 1029 (2010).  As such, *Hertz* overruled the Third Circuit's "center of corporate activities" test and required all courts to apply the "nerve center" test, which directs courts to look to "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Id.* at 1192.  The Supreme Court goes on to state that usually, a corporation's nerve center will be "the place where the corporation maintains its headquarters – provided

4

that the headquarters is the actual center of direction, control and coordination, i.e. the 'nerve center,' and not simply an office where the corporation holds its board meetings..." *Id.* The Supreme Court cautioned, however, that "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." *Id.* at 1194.

## III.    DISCUSSION

Essentially, all that is at issue here is how the Supreme Court's decision in *Hertz*, which overruled the Third Circuit's test for determining the principal place of business of a corporation for diversity purposes, affected which location constitutes Allstate NJ's principal place of business.  Prior to the *Hertz* test, under the Third Circuit's former "center of corporate activities" test, Allstate NJ's principal place of business was New Jersey.[1]  (*See* Def.'s Opp. Br. at 2.)  Defendant claims that under the new test in place in the

---

[1] Because Allstate NJ had identified New Jersey as its principal place of business under the Third Circuit's prior "center of corporate activities" test, it seems that even after the Supreme Court's decision abrogating that test, counsel for Allstate NJ had continued to point to New Jersey as the principal place of business in pleadings filed in other courts. (*See* Pl.'s Supporting Br. at 1-3.)  Plaintiff argues that these pleadings count as judicial admissions, estopping Allstate NJ from now arguing Illinois is its principal place of business.  However, the court notes that the Third Circuit has held that prior pleadings in other proceedings cannot be used to assess a defendant's principal place of business. *Mennen Co. v. Atlantic Mutual Ins. Co.*, 147 F.3d 287, 293 (3d Cir. 1998).  Furthermore, a recent case from this District rejected a similar argument, stating that, "the previous pleadings referred to by Plaintiff...have no bearing upon the record or this Court's determination of Defendant's principal place of business in this proceeding." *R.R. Constr. Co. of South Jersey, Inc. v. A.P. Constr., Inc.*, Civ. No. 10-6190, 2011 U.S. Dist. LEXIS 79471, at *10 (D.N.J. July 21, 2011).  This Court agrees with that reasoning, and the other pleadings by Allstate NJ identified by Plaintiff will have no bearing on the Court's decision in this case.

Third Circuit after *Hertz*, Allstate NJ's principal place of business is Illinois, whereas

Plaintiff maintains that even after the *Hertz* decision, Allstate NJ's principal place of

business is New Jersey.  The Court is mindful that the burden is on Defendant to show that

diversity exists and jurisdiction is supported here; *i.e.*, it is Defendant's burden to

demonstrate that Allstate NJ's principal place of business is *not* New Jersey.  *See*

*Frederico*, 507 F.3d at 193.[2]

In *Hertz*, the District Court of the Northern District of California had determined

that Hertz's principal place of business was California, based on that fact that Hertz's

business activity in California was "significantly larger" than in any other state.  *Hertz*, 130

S. Ct. at 1186.  In overturning this test in favor of the "nerve center" test, the Supreme

Court noted that, "the application of a more general business activities test has led some

courts, as in the present case, to look, not at a particular place within a State, but incorrectly

at the State itself, measuring the total amount of business activities that the corporation

conducts there and determining whether they are 'significantly larger' than in the

next-ranking State." *Id.* at 1193.  This approach, the Supreme Court cautions, "can lead to

strange results," such as California's larger population leading to nearly every national

retailer being deemed a citizen of California for diversity purposes.  *Id.* (quoting *Davis v.*

---

[2] It should be noted that Defendant never requested an evidentiary hearing on this issue; therefore, the Court will rely on the declarations submitted in determining whether Defendant has met its burden.  *See Brooks-McCollum v. State Farm Ins. Co.*, 376 Fed. Appx. 217, 220 (3d Cir. 2010) (permitting courts to rely on affidavits in determining corporate citizenship).  For support of Defendant's argument, then, the Court will be relying primarily on the William Ballinger's declaration.

*HSBC Bank Nev., N. A.*, 557 F.3d 1026, 1029-1030 (2009)).  Furthermore, the "business activities" test often points to multiple different business locales, since the corporation "may have several plants, many sales locations, and employees located in many different places."  *Id.* at 1194.  Due to these complications, the Supreme Court adopted the "nerve center" test, since it "ordinarily equates that 'center' with a corporation's headquarters, [and] is simple to apply *comparatively speaking*."  *Id.* at 1193 (emphasis in original).  Still, the Supreme Court recognizes that there "will be hard cases," such as where corporations "divide their command and coordinating functions among officers who work at several different locations."  *Id.* at 1194.  Nevertheless, the Supreme Court concludes that while there is no "perfect test," the "nerve center" test tends to point "towards the center of overall direction, control and coordination" of the corporation, and does not require courts to "weigh corporate functions assets or revenues."  *Id.*

Under the old Third Circuit test, New Jersey was clearly Allstate NJ's principal place of business, as all or almost all of Allstate NJ's business activities (*i.e.*, Allstate NJ's actual insurance policy sales) are directed at New Jersey.  However, under the *Hertz* test, courts must now avoid weighing "corporate functions, assets, or revenues," and instead look only to the "center of overall direction, control, and coordination."  130 S. Ct. at 1194.  However, in the present case such direction and control may appear to be present in two separate locations, and the Supreme Court in *Hertz* provides little guidance regarding exactly what different types of direction and control of the corporation are most important in determining the "nerve center."

7

While neither party focuses on the existence of the parent company in this case, AIC, the Court believes it is worth addressing that Northbrook, Illinois is the location of AIC's headquarters.  Allstate NJ, a wholly-owned subsidiary of AIC, was created to handle New Jersey's unique automobile insurance scheme.  It is not a coincidence that Defendant is alleging Northbrook, Illinois is the location of Allstate NJ's principal place of business; clearly, any presence Allstate NJ has in Northbrook, Illinois is due in part to AIC's presence in Northbrook, Illinois.  As such, the facts here are not like the hypothetical situation noted in *Hertz*, where activities visible to the public take place in New Jersey while the top officers direct those activities from "just across the river in New York." *Hertz*, 130 S.Ct. at 1194.  Here it is more than just the "activities visible to the public" that take place in New Jersey, for Allstate NJ does more than simply sell insurance policies in this state – it also has a designated "home office" in Bridgewater, where its President and CEO reports to work along with approximately 100 or so employees.  Therefore, the key issue here is how to determine, since *Hertz*, where a subsidiary's principal place of business is located when the "direction and control" of that subsidiary is not centralized in one location.  As stated in an Eastern District of Pennsylvania case, "[i]n the months since *Hertz*, courts that have sought to determine a subsidiary's principal place of business have focused on the location of day-to-day control and coordination of the company's business operations."  *EverNu Tech., LLC v. Rohm & Haas Co.*, Civ. No. 10-2635, 2010 U.S. Dist. LEXIS 88921, at *5-*6 (E.D. Pa. Aug. 26, 2010).  For example, a Southern District of Texas court found that a subsidiary's principal place of business was where the subsidiary's

sole officer and CEO set strategy and direction for the corporation and directed and oversaw the corporation's operations, and not where the parent company's board met and set the overall strategies and made "major decisions" for the subsidiary. *Astra Oil Trading NV v. Petrobras Am., Inc.*, Civ. No. H-09-1274, 2010 U.S. Dist. LEXIS 78573 (S.D. Tex. Aug. 4, 2010).

The Court is aware that here, Defendant is not arguing that the principal place of business of Allstate NJ is Illinois just because AIC's headquarters are in Northbrook, Illinois. Instead, Defendant is arguing that Allstate NJ has its own "nerve center" in Northbrook, Illinois, separate from AIC. However, the cases addressed above regarding issues involved with determining a subsidiary's principal place of business under *Hertz* are still somewhat analogous to the situation at hand, and provide some guidance in determining Allstate NJ's principal place of business. These cases point to the "location of day-to-day control and coordination" of the business, or where the corporation's CEO "implements, directs, controls, and coordinates [the corporation's] business activities," even when a board "makes major decisions and sets policies" from a separate location. *See EverNu Tech.*, 2010 U.S. Dist. LEXIS 88921, at *5-*6; *Astra Oil Trading NV*, 2010 U.S. Dist. LEXIS 78573, at *22. Here, Allstate NJ has a "home office" in Bridgewater, New Jersey, which is identified as such on its website. (Garner Decl., Docket Entry No. 11, Ex. 1.) Ballinger, Allstate NJ's President and CEO, reports to work at the Bridgewater, New Jersey office, as do around 100 employees. More importantly, however, the only description provided of what "direction and control" comes out of the Northbrook, Illinois office is

what Ballinger describes in his declaration.  Ballinger states that the Board of Directors

meetings take place in Northbrook, and that all other directors but himself "regularly report

to work" at Allstate NJ's Northbrook offices.  (Ballinger Decl. ¶¶ 4, 8.)  Ballinger also

provides a list of Allstate NJ's officers, and their titles, who also "regularly report to work"

at Northbrook.  (Ballinger Decl. ¶ 5.)  However, Ballinger provides no further indication of

what type of direction and management of Allstate NJ is done out of the Northbrook

offices, so that the Court cannot tell whether it is the "location of day-to-day control and

coordination" of Allstate NJ.  *See EverNu Tech.*, 2010 U.S. Dist. LEXIS 88921, at *5-*6.

Furthermore, the Court has not been provided with any information regarding how often

these directors and officers report to work pursuant to Allstate NJ specifically.  The

vagueness of "regularly report to work," and the fact that AIC's headquarters are in the same

location, and the Court's concern that there is no guarantee that these directors and officers

are focused full-time on Allstate NJ as opposed to also serving as directors and officers for

AIC or other AIC subsidiaries, all lead the Court to believe that the true management,

direction and control of the "day-to-day activities" of the corporation is out of Allstate's

Bridgewater office.[3]

---

[3] During the hearing, Defendant's counsel was concerned that the Court's focus on the
direction and control of the "day-to-day activities" of Allstate NJ was too similar to the Third Circuit's
old "center of corporate activities" test.  However, the Third Circuit's old test, overruled in *Hertz*,
focused on all aspects of a corporation's activities, not just where those activities were directed and
controlled.  For example, the old test looked to everything from the day-to-day management and
control to the comparative number of employees, amount of tangible property, and productive capacity.
*Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960).  The Supreme Court's
purpose in choosing the "nerve center" test was in part to eliminate the tedious calculations involved in

Based on the facts presented, Defendant has failed to persuade this Court that New Jersey is not its principal place of business. Rather, there are enough factors pointing to New Jersey as Allstate NJ's principal place of business for this Court to find that Defendant has failed to carry its burden. *See Hertz*, 130 S. Ct. at 1194-95 ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). These factors include: (1) the fact that Allstate NJ was created and formed specifically to address New Jersey's unique insurance market, and that Allstate NJ operates almost exclusively in this state; (2) the presence of Allstate NJ's President and CEO, Ballinger, in Bridgewater, New Jersey; (3) the further presence of a controller, a human resources department, and middle management employees in Bridgewater, New Jersey; (4) the listing on Allstate's website of Bridgewater, New Jersey as Allstate NJ's "home office;" (5) the vagueness of Ballinger's declaration in clearly identifying what direction and control over Allstate NJ comes out of Northbrook, Illinois; and (6) the fact that AIC operates out of Northbrook, Illinois, combined with the lack of any indication whether Allstate NJ's directors and officers work only for Allstate NJ, or instead hold various titles among AIC and its subsidiaries. Based on these factors, the Court concludes that

---

determining percentage of sales, amount of property, and other such details by state. *Hertz*, 130 S. Ct. at 1042. The "nerve center" test, pointing only to where the corporation's activities are directed and controlled from, is a more streamlined test to apply. Therefore this Court believes that *Hertz* was not stating that the location of direction and control from a board would trump the location of direction and control of day-to-day activities by a CEO; instead, the Supreme Court was only stating that courts should look just to the "direction and control" of the corporation and not to its sales, property, revenue, and other indicators of corporate presence in a state.

11

Defendant has failed to show that jurisdiction exists in this case.

Finally, Plaintiff argues that pursuant to 28 U.S.C. § 1447(c) he should be awarded costs, expenses, and attorney fees that were incurred as a result of the removal.  However, absent any unusual circumstances, courts are only authorized to award such costs, expenses, and attorneys fees where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  Here, Defendant certainly had an objectively reasonable basis for seeking removal, as the Third Circuit "principal place of business" test was so recently changed by the Supreme Court's decision in *Hertz*.  Furthermore, as discussed above, the Court recognizes that the facts here create a "hard case" regarding Allstate NJ's true principal place of business.  As such, there is no justification for awarding any costs, expenses or fees in this case.  *See Id.* ("when an objectively reasonable basis [for removal] exists, fees should be denied.")

## III.  CONCLUSION

For the reasons stated above, Plaintiff's request for remand is GRANTED, and this action is REMANDED to the Superior Court of New Jersey.  An Order accompanies this Opinion.

 s/ William J. Martini
**William J. Martini, U.S.D.J.**

**Date: August 24, 2011**